ALBERT FRIES et al., Appellants, *v.* GEORGE MERCK et al., Respondents.

CONTRACT — WHEN SALES EXECUTED OR EXECUTORY, MADE DURING SUSPENSION PROVIDED FOR IN A CONTRACT FOR PAYMENTS UPON SALES MADE WHILE IN FORCE, NOT SUBJECT THERETO.   An agreement by the patentees of a commodity with competitors in business, who agreed to become their selling agents, that the latter should receive a specified sum upon each pound thereof sold and delivered to them or to others during the life of the contract, and that if the patents were infringed upon, or if in any way without their fault the patentees should lose exclusive control of the market, they might terminate the agreement upon notice, the same to be again enforced when they regained exclusive control, does not entitle the agents to payments upon sales made by the patentees to

other parties during a suspension of the contract owing to an infringement of the patent, upon the ground that the goods sold were not delivered until after its reinstatement, since the right thereto depends upon both a sale and delivery during the operation of the contract, and all sales, whether executed or executory, during the period of suspension, are relieved from such payments.

*Fries* v. *Merck,* 44 App. Div. 415, affirmed.

(Argued May 24, 1901; decided June 11, 1901.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered December 8, 1899, upon an order reversing a judgment in favor of plaintiffs entered upon the report of a referee and dismissing the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*I. Albert Englehart* for appellants.  The express terms of the first clause of the agreement show conclusively that the parties only contemplated, *first,* a present sale, or, *second,* an executory sale which becomes a completed sale consummated upon the billing and delivery of each bill of goods thereunder, and, *third,* the exclusion of any goods held under consignment.  (Benj. on Sales, 358, § 92; *Anderson* v. *Read,* 106 N. Y. 333; *E. S. T. F. Co.* v. *Grant,* 114 N. Y. 40; *Schryer* v. *Fenton,* 15 App. Div. 158; *Burrows* v. *Whitaker,* 71 N. Y. 291; *Terry* v. *Wheeler,* 25 N. Y. 520; *Cornell* v. *Clark,* 104 N. Y. 451; *Kein* v. *Tupper,* 52 N. Y. 553; *Uhlman* v. *Day,* 38 Hun, 300; *Fitch & Lozee* v. *Beach,* 15 Wend. 221; *Russell* v. *Carrington,* 42 N. Y. 120.)  Defendants' contention that they are not liable to account to plaintiffs upon the contracts for future delivery of saccharine made at any time during the suspension of the contract, no matter when the deliveries thereunder were to be made, whether after reinstatement, September 27, 1897, or before, is not warranted by the terms of the agreement.  (*Smith* v. *Edwards,* 29 Hun, 496; *Dwight* v. *G. L. Ins. Co.,* 103 N. Y. 341; *Nicoll* v. *Sands,* 131 N. Y. 19.)  Where, on a sale of personal prop-

erty, it is agreed that payment thereof shall accompany or precede delivery, the title does not pass until payment is made. (*Schryer* v. *Fenton*, 15 App. Div. 158; *Leven* v. *Smith & Hartshorne*, 1 Den. 571; *Russell* v. *Minor*, 22 Wend. 659; *Hammett* v. *Linneman*, 48 N. Y. 399; *Thompson* v. *Leslie*, 39 N. Y. S. R. 47.)

*Francis D. Pollak* and *Alfred Jaretzki* for respondents. The claim of the plaintiffs to a bonus on saccharine delivered by Merck & Co., under sales contracts made during the suspension of their contract with Merck & Co., is contrary to the plain letter of that contract. (*Anderson* v. *Read*, 106 N. Y. 333; *Russell* v. *Nicoll*, 3 Wend. 112; *B. A. P. Co.* v. *S. A. Co.*, 39 App. Div. 617; *Decker* v. *Furniss*, 14 N. Y. 611.)

Martin, J. This action was brought for commissions and for an accounting under a written contract between the parties dated May 1, 1896. By the first paragraph it was agreed that from May 1, 1896, until the letters patent thereon should legally expire, or as long as the contract remained in force as therein provided, the defendants should pay to the plaintiffs fifty cents for each and every pound of saccharine of the strength of five hundred or four hundred and fifty and proportionately per pound on other strengths used by the defendants. or sold and delivered by them to the plaintiffs or any. person, firm or corporation in the United States and Canada.

By the third paragraph it was agreed that the defendants should appoint the plaintiffs as selling agents of such saccharine during the legally unexpired term of the letters patent thereon, and that all the obligations and terms of the agreement should stand and hold good until the legal expiration of said letters or the sooner termination of the agreement as therein provided.

Then follows a provision that should said letters patent in the meantime be infringed upon, or should the market of the United States for any other reason be no longer under the exclusive control and in the absolute possession of the defend-

ants without their fault, then they should have the right to terminate the agreement on five days' written notice, but that the same should be in all respects again enforced upon the defendants being reinstated in their rights and restored to such exclusive control during the legally unexpired term of such letters patent. On July 26, 1897, the defendants served upon the plaintiffs a written notice that the letters patent had been infringed upon, and that they elected to avail themselves of the option contained in the third paragraph of the agreement to terminate the same on and after August 1, 1897. Thereupon the agreement became suspended and inoperative, and so continued to and including the twenty-sixth day of the following September, when the plaintiffs were reinstated under the agreement in pursuance of the terms thereof. During the period of such suspension, the defendants contracted to sell considerable quantities of saccharine to parties other than the plaintiffs, to be delivered at future dates and which was not in fact delivered to the purchasers until after the twenty-seventh of September, when the plaintiffs were thus reinstated. The only issue between the parties and the only question to be determined upon this appeal, is whether the agreement fixing the commission to be paid the plaintiffs by the defendants applies to executory sales made by the latter to their customers during the time of such suspension, where the goods were delivered after the plaintiffs were reinstated under the agreement. After the suspension the price was materially reduced, and when the reinstatement occurred the price was again increased. Between August first and September twenty-sixth the defendants sold thirty-five hundred and thirteen pounds of saccharine at a reduced price, of which only three hundred and seventy-six pounds were actually delivered before September twenty-seventh. Of the amount thus sold during that time thirty-one hundred and thirty-six pounds were delivered after September twenty-seventh, and the referee found that the plaintiffs were entitled to a commission thereon, which amounted to fifteen hundred and sixty-eight dollars, and awarded them judgment for that

amount. The plaintiffs claim to be entitled to receive the royalty of fifty cents per pound upon the saccharine sold between August first and September twenty-seventh upon the ground that it constituted a "sale and delivery" after the contract was reinstated. The defendants claim that it was sold during the suspension of the contract and that such sales were neither within its spirit nor letter, and hence they were not bound to pay a royalty upon the sales made by them at a reduced price during such suspension. Upon appeal to the Appellate Division, that court unanimously reversed the judgment entered upon the report of the referee and ordered judgment absolute for the defendants. The question presented by this appeal involves the construction of the agreement between the parties. The defendants bound themselves to pay fifty cents upon each pound of saccharine " sold and delivered" while the contract was in force. If literally construed, both a sale and delivery must be made while the contract was in operation before any liability for the royalty or commission would be incurred. The plaintiffs, however, contend that a sale is not complete until the title passes by delivery, and hence legally the "sale and delivery" took place after the contract was reinstated as to the goods delivered after September twenty-seventh, although a valid contract of sale was made during the suspension of the agreement. This contention entirely omits the original agreement or contract of sale which ultimately resulted in the delivery of the goods. In other words, it assumes that the word "sale" referred only to an executed sale and not to an executory one. We think this construction is too narrow and does not carry into effect the intention of the parties or the spirit of the contract. The contract discloses that its essential and fundamental purpose was to confer upon the defendants exclusive control of the market for the goods to which it relates ; that they were to pay the royalty or commission only while they had such control, and that while it was lost they were to pay nothing whatever. It was only during the time they had such control that they agreed to pay, and obviously its continuance was the only condition upon

which payment was to be based. When that control was suspended the price of the article was materially reduced, and the defendants, in making sales during such suspension, would necessarily be compelled to sell at a reduced price. Indeed, they were forced to lower their prices during that time, and if the plaintiffs' contention was sustained they would be required to pay the same royalty or commission, although compelled to sell their goods at greatly reduced rates. During that period the defendants sold the goods in question by valid executory contracts, under which they were required to deliver the property thus sold. The contention that the requirements of the contract, that the defendants should pay fifty cents for each and every pound of saccharine sold and delivered by them during its continuance, included goods sold during its suspension, but not delivered until afterwards, cannot, we think, be sustained. Literally the right to the royalty or commission was dependent upon both a "sale and delivery" during the existence of the contract, and would not include a sale during its suspension, although the goods were delivered afterwards. Moreover, when we contemplate the purpose of the contract and the evident intention of the parties, it becomes manifest that it was not their intent that the defendants should pay a royalty or commission upon sales during the suspension of the contract, whether they were executory or executed.

In *Barber Asphalt Paving Co.* v. *Standard Asphalt Co.* (39 App. Div. 617) the plaintiff entered into a contract with the defendant, whereby the former authorized the latter to sell land asphalt for the purpose of laying sheet pavement for the period of one year from the date of the contract. The plaintiff in that case contended that the permission thus granted only allowed the defendant to sell such asphalt as should be used within that time. The defendant, on the other hand, contended that under the agreement it had the right to sell land asphalt during that period without regard to when it should be used. The learned referee who tried the case at bar was also the referee in that case, and in that case he said: " It is, however, matter of common knowledge that in ordinary

every day transactions the distinction between a sale that passes title, and an executory contract of sale is not heeded or observed. If goods are sold to be delivered and paid for at a future time, business men describe the transaction, and properly describe it, as a sale." He then gives the definition in the Century Dictionary of the word "sale" and adds: "It is plain to me that the words 'may sell' were not used by the plaintiff in the 6th clause of the agreement in any other than the ordinary sense, and that the plaintiff did not thereby intend to restrict the defendant to sales of land asphalt by which title would at once or presently pass to the purchasers." He thereupon held that a contract authorizing a sale of material for one year did not require that it be used within that time, but authorized a sale by executory contract. The decision in that case was affirmed by the Appellate Division in the first department upon the opinion of the referee. We think the principle applied in that case is applicable to the case at bar, and, hence, that the defendants were not bound to pay a royalty or commission upon sales made during the suspension of the agreement, although the delivery and payment were made after the reinstatement of the contract.

Thus we reach the conclusion that the judgment of the Appellate Division which reversed the judgment entered upon the report of the referee is right and should be affirmed, with costs.

PARKER, Ch. J., GRAY, O'BRIEN, LANDON, CULLEN and WERNER, JJ., concur.

Judgment accordingly.